UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sheryl Wilson,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Pan NorCal, LLC, et. al.,<br><br>　　　　　　Defendant. | No. 2:18-cv-00660-KJM-KJN<br><br>ORDER |
| Pan NorCal, LLC,<br><br>　　　　　　Cross Claimant,<br><br>　　v.<br><br>TJM Plaza GRF2, LLC,<br><br>　　　　　　Cross Defendant. | |
| TJM Plaza GRF2, LLC,<br><br>　　　　　　Cross Claimant,<br><br>　　v.<br><br>Pan NorCal, LLC,<br><br>　　　　　　Cross Defendant. | |

////

1    Sheryl Wilson fell while leaving the Panera Bread at a shopping center in Roseville,
2    California.  Wilson brings this action against Pan NorCal, LLC (Pan NorCal) and TJM Plaza
3    GRF2, LLC (TJM), the owners of the Panera Bread and shopping mall, respectively.  The
4    following motions are pending before the court: cross motions for summary judgment between
5    Wilson and Pan NorCal, a motion for summary judgment by Pan NorCal against TJM, and a
6    motion for judgment on the pleadings by TJM against Pan NorCal.  The court **grants in part the**
7    **motion by Pan NorCal against Wilson, and otherwise denies the pending motions**.

8    **I.     BACKGROUND**

9    The following facts are undisputed unless otherwise noted.  On March 15, 2017, plaintiff
10   Sheryl Wilson was using a knee scooter due to limited ability to walk.  Pl. Response to Statement
11   of Facts (SoF) ¶¶ 1 & 3, ECF No 61-1.  Wilson went to the Panera Bread located in the shopping
12   center at 1850 Douglas Boulevard, Roseville, California.  *Id*. ¶ 1.  Defendant Pan NorCal operates
13   the Panera Bread at that location and TJM owns the shopping center.  *Id.* ¶ 5.  Wilson entered the
14   Panera Bread and navigated through it to the restroom.  *Id*. ¶ 2.  As Wilson was leaving the
15   restaurant, she fell.  *Id.* ¶ 1.  The parties dispute the specifics of how the fall occurred.  Wilson
16   claims the door hit her as she was exiting, throwing her off balance and initiating her tumble.  *Id.*
17   ¶¶ 2–3; Wilson Dep. 89:12–90:2, ECF No. 61-2.  Pan NorCal avers Wilson lost her balance after
18   crossing the threshold of its establishment, and she fell outside the restaurant on the ramp
19   connecting the sidewalk to the parking lot.  SoF ¶¶ 2–3.  The parties agree that Wilson "landed on
20   her shoulder and ankle approximately 6-8 inches from the ramp located between the [s]hopping
21   [c]enter sidewalk and [s]hopping [c]enter parking lot and marked with raised yellow warning
22   bumps."  *Id.* ¶ 4.  Wilson later returned to this Panera location about a dozen times, without
23   incident.  *Id.* ¶ 21

24   At the time of this incident there was a lease agreement in effect between TJM as the
25   Landlord and Pan NorCal as the Tenant.  *Id.* ¶ 13.  The lease was initiated in January 2007, when
26   prior owners of the shopping center leased the space to Panera, LLC.  *Id.* ¶ 6.  In 2015 and 2016
27   respectively, Panera, LLC assigned its rights to Pan NorCal and the previous shopping center
28   owners assigned their rights under the lease to TJM.  *Id.* ¶¶ 7–8.

The lease defines three areas, the dominion of which are relevant to this proceeding.  First, the Premises is "the portion of the Building known as 1850 Douglas Boulevard, a portion of Suite 300, to be named Suite 300, consisting of approximately 4,250 square feet hereby leased to Tenant."  Lease Agreement ¶ 1.4, Nolley Decl. Ex. C, ECF No. 52-2.  Second, the Common Area, which includes "parking areas, access areas . . ., sidewalks, . . . [and] ramps."  *Id.* ¶ 7.1.  The Common Area is "subject to the exclusive control and management of Landlord."  *Id.* ¶ 7.2.  Third, the Outdoor Seating Area, for which Tenant is responsible for the costs of setting up, and, if necessary, removing the seating area, in addition to "clean[ing] and maintain[ing] the sidewalk area outside the Premises."  *Id.* ¶ 1.25.  The Outdoor Seating Area is "an area adjacent to the Premises . . . substantially in the location shown on Schedule 3A."  *Id.*  Schedule 3A is a diagram that depicts the Panera Bread and the surrounding sidewalk and parking lot.  *Id.* at Schedule 3A.  "[A]ll of the Outside Seating Area adjacent to the Premises is located within the Common Area . . . and not within the Premises itself," *id.* ¶ 1.25.2, but is "deemed to be part of the Premises," *id.* ¶ 1.4.  The border surrounding the Panera Bread labeled on the diagram as the "Patio" marks the parameters of the Outdoor Seating Area.  *Id.*  While this area takes up a substantial portion of the sidewalk, based on a review of the diagram, there are areas of the sidewalk surrounding the Panera Bread restaurant, including the ramp, that are not part of the Outdoor Seating Area.

The lease agreement also contains an indemnity clause.  The clause provides in relevant part:

> Landlord . . . shall not be liable to Tenant, or Tenant's . . . customers, invitees or third parties . . . for injury or death to persons, in, on, or about the Premises (except as provided below), and Tenant agrees to defend, indemnify and hold Landlord . . . harmless from and on account of any such liability arising from Tenant's negligent acts or omissions. . . .  Landlord shall be responsible for property damage caused by Landlord's violation of its obligations pursuant to the Lease or by Landlord's gross negligence or willful misconduct.  Tenant further agrees to defend, indemnify and hold Landlord, and Landlord's agents and employees[,] harmless from and on account of any claims arising from any breach or default in the performance of any obligation of Tenant to be performed under the terms of this Lease, or arising from any negligent act or omission of Tenant, or Tenant's officers, agents, employees, or customers.

*Id.* ¶ 31.1.  With respect to compliance with the law, expressly including the Americans with

Disabilities Act (ADA), "Tenant . . . shall comply promptly with all laws . . . insofar as they relate to the condition, use, or occupancy of the Premises." *Id.* ¶ 21. However, Tenant is not "responsible for compliance . . . with respect to: (i) structural changes . . . (ii) alterations or improvements to the Building as a whole and the common areas . . . (iii) work necessitated by defects in the construction of the Building." *Id.* Additionally, "Tenant shall have no responsibility to correct or remedy [ ] any violations of laws related in any way to the Premises existing on or prior to the date Tenant took possession." *Id*.

On March 27, 2018, Wilson filed this action against Pan NorCal and TJM asserting violations of the ADA, 42 U.S.C. § 12100 *et seq*.; the California Disabled Persons Act, Cal. Civ. Code § 54 *et seq.*, (DPA); and the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq. See generally*, Compl., ECF No. 1. She also asserts a personal injury claim. *Id.*

Pan NorCal brings its crossclaim against TJM seeking equitable indemnity for Wilson's claims. First Am. Cross-cl., ECF No. 13. In response TJM brings a crossclaim against Pan NorCal for (1) express indemnity; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; and (4) declaratory relief. *See generally* TJM Cross-cl., ECF No. 16.

The three fully briefed motions are pending before the court:

1. Pan NorCal's motion for summary judgment on Wilson's claims. Mot. for Summ. J. (Wilson MSJ), ECF No. 52; Wilson Cross-Mot., ECF No. 61; Wilson Reply, ECF No. 63.
2. Pan NorCal's motion for summary judgment against TJM. Mot. for Summ. J. (TJM MSJ), ECF No. 53; TJM Opp'n, ECF No. 58; TJM Reply, ECF No. 60.
3. TJM's motion for judgment on the pleadings as to Pan NorCal's crossclaim. Mot. for J. on the Pleadings, ECF No. 62; Opp'n ECF No. 65; Reply, ECF No. 67.[1]

/////

---

[1] Pan NorCal objects to this motion as untimely. In an order resetting the motion hearing on Pan NorCal's motions for summary judgment, the court reset the dispositive motion hearing deadline. Prev. Order (Nov. 8, 2021) at 1, ECF No. 59. In doing so, the court did not specify that additional motions could not be filed prior to the new hearing date. *Id.* Thus, the court accepts the motion as timely filed.

4

1  On December 17, 2021, the court held a hearing on the three motions. The following
2  attorneys appeared for their clients: Plaintiff's Counsel Joseph Zink, Pan Norcal's Counsel Alan
3  Nolley, Jr., and TJM's Counsel Tudor Jones.

## II.   LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Both must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S. at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## III.   ANALYSIS

The court begins by determining whether summary judgment is appropriate for Wilson's ADA and state law claims before turning to the dispute between the defendants.

### A.   Pan NorCal's Motion for Summary Judgment Against Wilson

#### 1.   Wilson's ADA Claim

Pan NorCal argues Wilson's ADA claims are subject to summary judgment because Wilson lacks standing under the ADA because the alleged ADA violations did not prevent her from visiting the Panera Bread. Wilson MSJ at 1. Under the ADA, no individual may be discriminated against based on their disability. 42 U.S.C. § 12182(a). A plaintiff establishes standing by demonstrating she "has suffered an injury-in-fact, [ ] the injury is traceable to the

1  [defendant]'s actions, and [ ] the injury can be redressed by a favorable decision." *Chapman v.*
2  *Pier Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).  Further, the plaintiff must
3  demonstrate a "real and immediate threat of repeated injury" in the future.  *Id*. at 948 (quoting
4  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (citation omitted).  When the plaintiff
5  "seeks injunctive relief, 'past exposure to illegal conduct does not in itself show a present case or
6  controversy.'"  *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1098 (9th Cir.
7  2017) (quoting *Lyons*, 461 U.S. at 102).  "[A]n ADA plaintiff can establish standing . . . either by
8  demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a
9  noncompliant facility."  *Chapman*, 631 F.3d at 944.

10  In her complaint, Wilson alleges standing based on her continued deterrence "from
11  visiting the restaurant because of the future threats of injury created by the[ ] barriers" created by
12  the force of the door as it closes and slope of the sidewalk.  Compl. ¶ 11.  Though these
13  allegations of deterrence were sufficient to survive a motion to dismiss, they fall short at
14  summary judgment.  *See Anderson*, 477 U.S. at 248 (1986) ("[A] party opposing a properly
15  supported motion for summary judgment may not rest upon mere allegations or denials of his
16  pleading, but . . . must set forth specific facts showing that there is a genuine [factual dispute].")
17  (internal quotation marks and citation omitted).  Wilson presents neither evidence that she is
18  deterred from returning to the Panera Bread restaurant nor precedent showing that she can
19  reasonably claim deterrence despite her repeated subsequent visits to the same restaurant.  In fact,
20  Wilson testified at deposition that she visited the same Panera location a dozen times after her fall
21  and did not encounter any issues.  Wilson Dep. at 67:14–67:16.  Wilson cites *Chapman*, noting a
22  plaintiff may have standing under the ADA "even if he is not deterred from returning to the
23  public accommodation at issue."  *Chapman*, 631 F.3d at 944.  But Wilson does not acknowledge
24  that deterrence is superfluous only when a "plaintiff can establish . . . injury-in-fact coupled with
25  an intent to return to a noncompliant facility."  *Id*.

26  While Wilson asserts injury-in-fact, she does not allege standing based on intent to return,
27  and the record before the court is insufficient to support such a claim.  Intent to return requires a
28  plaintiff "demonstrate[ ] an intent to return to the geographic area where the accommodation is

located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008); *see also Rutherford v. Evans Hotels, LLC*, No. 18-435, 2020 WL 5257868, at *17 (S.D. Cal. Sept. 3, 2020) (citations omitted). Courts often use the following factors to determine "intent to return: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Rutherford*, 2020 WL 5257868, at *17 (quoting *Antonio v. Vanareth Kim Yi*, No. 2:14-4323, 2015 WL 13603781, at *2 (C.D. Cal. Mar. 4, 2015) (collecting cases)).

Although Wilson returned to this particular Panera Bread after her fall, when counsel asked Wilson during her deposition if she planned to return to the restaurant, Wilson explained "it would depend on – if I went to Kaiser Roseville, than [sic] yes, I love to stop there." Wilson Dep. at 65:22–65:23. Wilson also acknowledged at the time of her deposition that she had not been to Kaiser Roseville in about six months. *Id.* at 66:1–66:8. As there are Panera Bread and Kaiser locations closer to Wilson's home, *id.* at 66:11–66:20, the record does not establish Wilson's definitive plans to return. The evidence merely shows a vague description of the circumstances under which Wilson would consider visiting the same Panera Bread location where the incident occurred. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when that day might be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992); *Kristoffersen v. RVS110, LLC*, No. 3:18-392, 2019 WL 1877183, at *3 (S.D. Cal. Apr. 26, 2019) (applying *Lujan* to ADA standing analysis).

Accordingly, Wilson does not have standing to pursue her ADA claim here.

### 2. Jurisdiction over Remaining State Law Claims

Despite Wilson's lack of standing to bring a federal claim, the court exercises its discretion to retain jurisdiction over the rest of the action. A district court may decline to exercise supplemental jurisdiction over a state law claim where (1) the claim "raises a novel or complex" state law issue, (2) "the claim substantially predominates over" the original jurisdiction claims,

(3) the court has dismissed all original jurisdiction claims, or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In determining whether it is appropriate to retain jurisdiction, the "justification lies in considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). "Given the very late stage [of the case]. . . [the relevant] values overwhelmingly favor[ ] retaining jurisdiction over" Wilson's state law claims. *Arroyo v. Rosas*, 19 F.4th 1202, 1214 (9th Cir. 2021).

### 3. Threshold Factual Question Regarding Remaining Claims

One critical factual dispute affects the court's resolution of Pan NorCal's motion for summary judgment of the remaining state claims Wilson brings: where did Wilson's fall begin? Pan NorCal contends that Wilson exited the Panera Bread store and was on the slope of the sidewalk before she lost balance and began to fall. Wilson MSJ at 3. Wilson claims she fell when she was going "through the exit door" and it hit the back of her scooter. SoF ¶ 2.

What caused Wilson's fall and whether she was on the Premises when she started to fall are crucial factual questions that must be answered in determining whether Pan NorCal can be held liable for Wilson's injuries in connection with any of the following claims. Given the state of the record here, this determination must be left to a trier of fact; even if Wilson is the only witness, her description of what happened must be carefully evaluated and, in the process, any credibility issues weighed. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

### 4. Wilson's state law disability claims (DPA and Unruh Act)

Pan NorCal argues Wilson's claims under the DPA and Unruh Act fail as a matter of law because there can be no ADA violation. Wilson MSJ at 2. Violations of both the DPA and the

/////

Unruh Act can be predicated on either intentional discrimination or a violation of the ADA.  Cal. Civ. Code § 54.1(d); Cal. Civ. Code § 51(f).

Under the DPA "[i]ndividuals with disabilities shall be entitled to full and equal access . . . to accommodations, advantages, facilities, . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited. . . ." Cal. Civ. Code § 54.1(a)(1). "'Full and equal access' is defined by section 54.1 to mean access that complies with the regulations developed under the federal ADA or under state statutes, if the latter imposes a higher standard." Cal. Civ. Code § 54.1(a)(3); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012). "The Unruh Act provides in part that '[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.'" *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1029 (S.D. Cal. 2017) (quoting Cal. Civ. Code § 51(b)). "The Unruh Act also provides that a violation of the federal ADA constitutes a violation of § 51 of the Unruh Act." *Id.*  Accessibility "is defined, in part, by the ADA Accessibility Guidelines" (ADAAG). *Chapman*, 631 F.3d at 945 (citing 28 C.F.R. § 36.406(a); 28 C.F.R. pt. 36, app. A) (citations omitted). "Promulgated by the Attorney General . . . these guidelines 'lay out the technical structural requirements of places of public accommodation.'" *Id.* (quoting *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1080–81 (9th Cir. 2004)).

Regarding her claims about the Panera Bread exit door, Wilson concedes the ADAAG is "silent on the force required to open an exterior door." Wilson Cross-Mot.at 11 (citing 2010 ADAAG 404.2.9).  Pan NorCal points to Wilson's own expert's concession during his deposition "that the alleged exterior door pressure issue . . . did not in fact violate the ADAAG guidelines." SoF ¶ 17.  Given this, there is no factual dispute related to the closing of the door; the court grants summary judgment on Wilson's DPA and Unruh Act claims as to the door.

Conversely, there is no dispute but that the slope of the sidewalk is a violation of the ADA.  The ADAAG requires that the space in front of a door have a slope no greater than two percent.  2010 ADAAG §§ 404.2.4 & 404.2.4.4; *see also Strong v. Valdez Fine Foods*, 724 F.3d

1042, 1046 (9th Cir. 2013); Plaintiff's expert measured the slope of the area just outside the door and found it was between 3.7 and 4.8 percent. Card Expert Report at 1–6, Nolley Decl. Ex. E, ECF No. 52-2. Pan NorCal does not dispute the incline violates the ADA; rather, it argues that the evidence does not establish Wilson fell in an area under Pan NorCal's control. Wilson Reply at 2. Rather, its argument insists that TJM is responsible for any violation. Based on the text of the lease agreement, any finding regarding the degree to which either defendant is liable for the slope, turns on unresolved questions of fact. For example, the lease explains that Pan NorCal has "no responsibility to correct or remedy [ ] any violations of laws" that "exist[ed] on or prior to the date [Pan NorCal] took possession." Lease Agreement ¶ 21. And at hearing, the parties disputed whether Pan NorCal or its predecessor in interest constructed the sidewalk, thereby creating the ADA violation at issue in this case. If the structural state of the sidewalk was no fault of Pan NorCal or its predecessor, responsibility for the ADA violation may very well rest with TJM. The record presently before the court presents a genuine dispute regarding whether the sidewalk Pan NorCal or TJM was responsible for ensuring the sidewalk was ADA compliant. The court therefore denies summary judgment.

### 5. Premises Liability

Pan NorCal also argues it is entitled to summary judgment on Wilson's premises liability claim. Wilson MSJ at 2. Specifically, Pan NorCal points to the lease agreement, arguing the exterior door to its store did not pose a dangerous condition for Wilson and that Pan NorCal did not have sufficient control over the ramp to be liable for its slope. *Id.* 14–16. Under California law, the elements of premises liability are the same as negligence: "a legal duty of care, breach of that duty, and proximate cause resulting in injury." *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1158 (2016); *Lemberg v. JPMorgan Chase Bank, N.A.*, No. 17-5241, 2018 WL 1046886, at *2 (N.D. Cal. Feb. 26, 2018). "Premises liability is grounded in the possession of the premises and the attendant right to control and manage the premises; accordingly, mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act." *Kesner*, 1 Cal. 5th at 1158 (internal citation and quotation marks omitted).

Wilson asserts the violation of the ADA with respect to the sidewalk shows negligence. Wilson Cross-Mot. at 17–18; Compl. ¶¶ 40–43. Under California law, negligence may be presumed if a plaintiff establishes the following elements: (1) the defendant violated a statute; (2) the violation was the proximate cause of the plaintiff's injury; (3) the injury "resulted from an occurrence [ ]the nature of which the statute . . . was designed to prevent"; and (4) the plaintiff was among the class of persons for whose protection the statute was adopted. *Galvez v. Frields*, 88 Cal. App. 4th 1410, 1420 (2001). As noted above, Wilson has presented undisputed evidence that the slope of the sidewalk ramp violates the ADA. The lease agreement can be read to provide that Pan NorCal had some level of control over the sidewalk, in that it "deem[s] [the Outdoor Seating Area] to be part of the Premises." Lease Agreement ¶ 1.4. Despite the existence of the ADA violation and the undisputed fact of Pan NorCal's possession of some portion of the sidewalk, there is still a question of whether the slope of the ramp was under Pan NorCal's control. The lease is clear that Pan NorCal was responsible for maintaining the sidewalk by keeping it clean, but the record does not eliminate the question whether the violation of the ADA represented by the ramp existed before Pan NorCal took control of the Premises, or if Pan NorCal had the duty to correct this issue under the lease agreement. Summary judgment is inappropriate where there is, as here, "a mixed question of fact and law." *Cf. Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1123 (9th Cir. 2008); *Shannon v. Cnty. of Sacramento*, No. 2:15-967, 2019 WL 2715623, at *3 n.2 (E.D. Cal. June 28, 2019) ("'mixed questions of law and fact' or questions of the 'application of law to fact,' are questions of the sort ordinarily reserved for the jury.") (citation omitted). The court finds this claim must proceed to trial.

**B.    Cross-Motions by Pan NorCal and TJM**

Pan NorCal and TJM each argue they are entitled to judgment as a matter of law on their respective crossclaims. The crossclaims essentially distill down to a dispute about each party's compliance with the lease agreement. Specifically, they disagree about which party is liable to Wilson and whether either party violated the indemnity provision of the lease agreement.

The court first resolves TJM's motion for judgment on the pleadings. Federal Rule of Civil Procedure 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay

11

trial—a party may move for judgment on the pleadings." A Rule 12(c) motion may raise the defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(h)(2)(B). The same standard of review applies to motions brought under Rule 12(c) or Rule 12(b)(6). *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) . . . ."). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Id*.

TJM moves for judgment on Pan NorCal's claim against it for equitable indemnity because the lease agreement contains an express indemnity provision. Mot. J. on the Pleadings at 7; Lease Agreement ¶ 31.1. Equitable indemnity requires "(1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *AmeriPOD, LLC v. DavisREED Constr. Inc.*, No. 3:17-747, 2017 WL 2959351, at *4 (S.D. Cal. July 11, 2017) (quoting E*xpressions at Rancho Niguel Ass'n v. Ahmanson Devs., Inc.*, 86 Cal. App. 4th 1135, 1139 (2001)). "[T]he obligation of equitable indemnity arises from 'equitable considerations, brought into play either by contractual language not specifically dealing with indemnification or by the equities of the particular case.'" *American Licorice Co. v. Total Sweeteners, Inc.*, No. 13-1929, 2014 WL 892409, at *5 (N.D. Cal. March 4, 2014) (quoting *Bay Dev., Ltd. V. Superior Court*, 50 Cal. 3d 1012, 1029 (1990)). In this case, "[w]here [ ] the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity." *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 628 (1975). "When . . . the duty established by contract is . . . inapplicable to the particular factual setting before the court, the equitable principles of implied indemnity may indeed come into play." *E. L. White, Inc. v. City of Huntington Beach*, 21 Cal. 3d 497, 508 (1978).

The Supreme Court of California has rejected a contention that there is no path for equitable indemnity simply because the parties "exclud[ed] from their agreement any language

indicating a right of indemnity in [the plaintiff] against [the defendant.]" *Id.* at 506. The court did not take such an exclusion to signal the parties' "intention that no such right should exist or be implied under any circumstances in favor of [the plaintiff.]" *Id.* Here, the factual scenario of a customer's falling on or near the Premises is contemplated by the lease agreement's express indemnity clause. However, the provision only contemplates the need for indemnity when the injury is cause by a "negligent act or omission of [Pan NorCal]." Lease Agreement ¶ 31.1. Thus the agreement does not clearly "obligate Pan NorCal to indemnify TJM for occurrences if Wilson's fall did not result from Pan NorCal acting negligently or failing to act. TJM Opp'n at 8. At this stage, the court finds Pan NorCal may maintain a claim for equitable indemnity.

The court turns to Pan NorCal's motion for summary judgment. The court finds a genuine dispute as to a material fact prevents summary judgment on TJM's claims against Pan NorCal for indemnity and breach of contract. Pan NorCal argues TJM's claims fail as a matter of law because the lease does not require Pan NorCal to "indemnify TJM for incidents occurring in the Common Area, and it is undisputed that Plaintiff's fall occurred in the Common Area." TJM MSJ at 9. But as explained above, where Wilson fell is a question of fact for the jury, with the possibility of credibility determinations.

Furthermore, the indemnity provision requires Pan NorCal to "defend, indemnify and hold Landlord . . . harmless from and on account of any claims arising from any breach or default in the performance of any obligation of Tenant . . . or arising from any negligent act or omission of Tenant." Lease Agreement ¶ 31.1. Here, Wilson's claim that Pan NorCal's negligence contributed to her injury triggers Pan NorCal's duty to defend TJM. California courts have acknowledged that "sometimes it will not be clear whether an action brought against the indemnitee is within the scope of the indemnity until after the underlying action has been resolved." *City of Bell v. Superior Ct.*, 220 Cal. App. 4th 236, 249 (2013), *as modified* (Oct. 9, 2013), *as modified on denial of reh'g* (Oct. 25, 2013). "In those situations, the duty to defend nonetheless arises . . . . unless the contract provides to the contrary, the duty to defend claims which, at the time of tender, allege facts that would give rise to a claim of indemnity." *Id.* (citation omitted). Thus, Wilson's allegations are sufficient to give rise to Pan NorCal's

13

obligations, regardless of Pan NorCal's ultimate liability.  The court denies Pan NorCal's motion in this respect.

The court also denies Pan NorCal's motion for summary judgment as to TJM's breach of the implied covenant of good faith.  "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc*., 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995); *City of Fresno v. Tokio Marine Specialty Ins. Co.*, No. 1:18-504, 2018 WL 3691407, at *4 (E.D. Cal. Aug. 1, 2018) (same). *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) (citation omitted).   TJM asserts Pan NorCal's filing of a crossclaim frustrated the purpose of the indemnity provision, although it has not moved for summary judgment on this issue.  TJM Cross-Cl. ¶ 31, ECF No. 16.  While TJM's position is reasonable, given that the sole purpose of the contractual provision was to ensure Pan NorCal defended TJM against the very type of claims Wilson brings now, the court cannot find for TJM based on a review of the pleadings alone.

## IV.   CONCLUSION

The court **grants in part Pan NorCal's motion for summary judgment on Wilson's claims**.  The court grants the motion with respect to lack of standing on the ADA claim and with respect to the weight of the door on the state claims.  The court otherwise denies the motion.

The court **denies TJM's motion for judgment on the pleadings as to Pan NorCal's crossclaims**.

The court **denies Pan NorCal's motion for summary judgment on TJM's crossclaims**.

This order resolves ECF Nos. 52, 53 & 62.

IT IS SO ORDERED.

DATED: July 22, 2022.

CHIEF UNITED STATES DISTRICT JUDGE